### H. C. COOK CO. v. LITTLE RIVER MFG. CO.

(Circuit Court, D. Connecticut. March 31, 1905.)

#### No. 1,123.

PATENTS—INFRINGEMENT—NAIL CLIPPERS.
    The Wenger patent, No. 569,903, for finger-nail clippers, construed, and *held* not infringed.

In Equity. Suit for infringement of patent. On final hearing.

George D. Seymour, for complainant.
A. M. Wooster, for defendant.

PLATT, District Judge. This is the usual action asking for an injunction and accounting based upon an alleged infringement of letters patent No. 569,903, dated October 20, 1896, issued to Julius

D. C. Wenger, for an improvement in finger-nail clippers, the title of said letters patent being in the complainant.    The claims in issue are Nos. 1 and 2:

(1) The combination of the rigid member, the spring member connected therewith by one end, coacting cutters on the disconnected ends of said members, and the operating lever pivoted on the rigid member near the cutters and having a short end extended through a perforation in the spring member, substantially as described and for the purpose specified.

(2) The combination of the rigid member longitudinally slotted, the spring member connected therewith by one end, coacting cutters at the disconnected ends of said members, the operating lever pivoted to said rigid member, and means for confining the lever when turned down into the slot of the rigid member, substantially as described and for the purpose specified.

The defenses are (1) noninfringement; (2) that, if the patent in suit shall be construed broadly enough to discover infringement, it must be found invalid for want of invention.

Both parties have with painstaking care prepared and presented this cause. The court has examined the patent in suit and defendant's structure in the strong light cast upon them by the prior art. It is useless to enter upon an exhaustive discussion of the matter, and I may therefore hope to be excused if I shall confine my comments to the things which strike me as essential. When the patentee approached the art there was little left to be done. Heim and Matz recognized the narrowness of the field, and frankly said so. They obtained letters patent No. 244,891, dated July 26, 1881, for an application of the lever principle to such clippers, and truthfully point out in the specifications, lines 60–66, that it was old in the art to produce finger-nail trimmers "with two hinged jaws held normally gaping by a spring and having separately attached nipping edges," the jaws being compressed directly by the thumb and finger; and so, disclaiming broad invention, claimed as new "a pair of nail-clipping jaws, a, a', formed of a single integral piece of steel, A, which jaws are held normally gaping by their resilience, and are closed by a cam-headed lever, C, substantially as set forth." No. 244,891 was reissued November 1, 1881, as No. 9,921, and here a careful description shows how a cam lever can be pivoted upon a yoke fastened to one of the normally gaping spring jaws, so that it may press firmly together the jaws with their cutting edges. We have here, then, a full disclosure of the lever, with a cam action, bearing upon the outside of one of the members, and using the other member as the one to offer the resisting force, while the lever works upon its pivot, and how a single integral piece of steel can be bent upon itself in U shape, so that it will act as its own spring, or the jaws may be hinged together and kept apart by a spring; thus admitting the equivalency of the two methods of spring action. It is true that none of the nail clippers of the lever-pressure type offer a complete anticipation of the patent in suit. The La Casse patent, No. 523,708, July 31, 1894, in Fig. 9 shows a lever acting in slots with a cam-like action, which engages the member upon which one of the cutting edges is formed, pushing it forward to cut, and pulling it back after cutting. By using the slotted member and the perforated member the patentee obtains a peculiar kind

of inside connection for his lever, but it is of a peculiar kind, acting in a special way, and the inventive conception does not appear to have gone beyond the peculiar method of employing certain functions, which will be pointed out. Nor can I attach any importance to the alleged novelty and inventive thought in claiming as two elements of his invention a spring member and a rigid member. Heim and Matz had two members, and one of them was rigid enough for the purpose then sought. By slotting one member in the case of the patent in suit, it is somewhat weakened, it is true, but to turn the edges of the sheet steel, and thus add resisting capacity, was an understood thing in letters patent to Browne, No. 561,482, dated June 2, 1896, and what was done is, after all, as the Patent Office examiner suggested, "merely a verbal matter," which was, perhaps, a polite way of saying "merely a matter of words." Both members normally gape, by reason of the resiliency, caused by turning the strip of steel upon itself, and the rigidity given to one member by turning in the edges of the strip does not divest that member of its capacity for taking part in the springing operation. It is inconceivable that one member does all the springing, the other member none; and the patentee seems to concede this by saying "practically rigid" in his specifications. If it is more than a matter of words, then the combination of a rigid member with a spring member is shown in English patent to Gestetner, No. 8,638, July 1, 1886. It is wasteful to multiply citations on this as well as on many other points. I am in accord with the defendant's expert in his position that if the elements into which the claims are divided, as expressed by their terms, shall be held to include mechanical equivalents, it is easy to read them upon devices shown in the prior art; but, as I have said before, not in their entirety upon any one device. The situation demands, then, that if Wenger invented anything (and I think that he did), we must look for it around about his treatment of the lever action, and what he thought out is easily discovered. He claims an "operating lever * * * having a short end extended through a perforation in the spring member, substantially as described." He describes the short end of the lever as for a short distance, substantially parallel to the body of said lever, and extending "down through the perforation 7 of the spring member." The lever exerts its force by sliding with a cam action upon the back or outer face of the spring member, and is pivoted upon the rigid member. The cutting edges "shut squarely against each other as in cutting pliers," and this is necessary to the inventive thought, because the force of the lever weakens after the short end has moved a certain distance, and will not remain sufficiently powerful to injure the cutting edges when they come together.

Complainant's expert undertakes to juggle with the word "perforation," but he seems to admit that one cannot perforate without piercing through, or at least penetrating into the interior of, the substance operated upon. The hole or aperture becomes essential to the invention when we consider that it was necessary to employ the cam-like action of the lever end upon the outside surface of

the spring member and near its cutting end.   In defendant's construction the short arm of the lever is in substantial alignment with the long end thereof, and is arranged to engage the horizontal portion of a staple which lies directly in front of, and has a path of movement extending from, a point slightly below the pivot pin to a point slightly above and close to said pin.   Therefore the operating lever acts substantially as a straight lever, with the greatest possible power-multiplying effect, and with the least possible loss by friction.   The engagement is with a yoke upon the spring member, which lies wholly between the members; and the closing action is effected by pull upon the yoke, instead of cam action upon the outer face of the member.   It is evident that a result of this difference in construction is that in defendant's construction the leverage increases as the closing movement progresses, while in complainant's it decreases at the same stage of operation; and so in cutting heavy nails the patent in suit works with a decreasing, and the defendant's structure with an increasing leverage.   So, also, this peculiarity enables the defendant to make use of the shearing motion, which compels the cutting edges to pass each other, whereas the patent in suit demands the square meeting of the cutting edges, as in the case of pliers.   The record in the Patent Office and the prior art all demonstrates that Wenger adopted a number of old features and combined them in a way, which, after parleying with the Patent Office, he specifically claimed.   Defendant likewise adopted many old features, and combined them in a different way, and asked for a patent upon his particular method, which was granted without contention, and carries with it such probative force as such grants usually enjoy.   The patentee tells us that the main objects of his improvements are simplicity and economy in construction and general efficiency and convenience in use.   It will be seen by an examination of finger-nail clipper or trimmer patents as far back as that of Edge, No. 183,256, October 17, 1876, that every patentee, whether he says so in plain terms or not, was hunting for convenience, simplicity, and economy in construction. Extreme cheapness and inefficiency are usually handmaidens, and it is feared that such may be the case in many of these patents, but that, of course, offers no reason why the man who has really invented anything in that line should not have the benefit of his conception.   On the other hand, it offers no excuse for a demand reaching beyond the inventive thought.   The conclusion is, that the patent, as it must be construed, is not infringed.   The second defense need not be considered.

Let the bill be dismissed.