### H. C. COOK CO. v. LITTLE RIVER MFG. CO.

(Circuit Court of Appeals, Second Circuit. April 2, 1906.)

No. 149.

PATENTS—INFRINGEMENT—NAIL CLIPPERS.

The Wenger patent, No. 569,903, for finger nail clippers, while narrow in scope, was not anticipated and discloses invention. Also, *held* infringed as to claim 1, but not as to claim 2.

Appeal from the Circuit Court of the United States for the District of Connecticut.

Appeal from an interlocutory decree (136 Fed. 414) on dismissing bill for infringement of complainant's patent No. 569,903, granted October 20, 1896, to Julius D. C. Wenger for a finger nail cutter.

James C. Chapin and George D. Seymour, for appellant.

A. M. Wooster, for appellee.

Before WALLACE, · LACOMBE, and TOWNSEND, Circuit Judges.

TOWNSEND, Circuit Judge. The court below in its opinion has discussed the construction of the patent, the devices in issue, and the prior art, and reached the conclusion that the patent covered such a narrow invention that it was not infringed. 136 Fed. 414. The patented cutter comprises a rigid and a resilient cutting member, doubled upon each other at their junction, and operated by a lever pivoted on the rigid member, having its short end extended through the resilient member. The departure from the prior art in which the invention resides consists in so constructing the combination that the lever passes down through a slot in the rigid member, and transmits its rigidity to a resilient member, at a point close to the cutting edges, by means of the short end of a lever extended through a perforation in the resilient member. The novel functional results of this construc-

tion, inter alia, are to give a powerful purchase, and, while providing for the separation of the members by the use of a flexible member, to make it as efficient in the cutting operation as though it were a rigid member by imparting to it a firm support, to prevent it from being bent or twisted in operation. That this construction was novel appears from the admission of defendant's expert, who says as follows:

"There is no patent among the patents of the prior art which shows two cutter-bearing members, the resiliency of the metal forming one or both of them serving to separate the cutters, and an operating lever pivotally mounted on the member which is more rigid than the other."

This admission is confirmed by an examination of the patents cited by defendant's expert as the closest references found in the prior art. These patents are patent No. 523,708, granted to La Casse in 1894, and patent No. 271,022, granted to Beckley in 1883. The defendant's expert has selected Fig. 9 of the La Casse patent as illustrating "the form of trimmer most pertinent to the subject-matter of this suit." But this cutter belongs to a distinct type, differing from that of the patent in suit, in that it consists of a rigid member arranged to slide back and forth upon another rigid member, which is stationary, and a lever pivotally mounted in a longitudinal slot in the stationary member. The short end of the lever, however, passes down through the movable member, as in the patent in suit. The cutting operation is accomplished by the lever forcing the sliding member along the surface of the stationary member until the cutting edges contact. There is no resilient member, no lever imparting rigidity in the sense of the patent in suit, and no such compression of the jaws of cutters mounted on opposed members or arms, as is shown in the patent in suit.

Defendant's expert says:

"The patent to Beckley shows a construction which is perhaps the closest embodiment of the particular construction specifically set forth in claim 1 of the patent in suit. * * * It is a somewhat closer embodiment of the construction specified in the claim than the construction shown in the patent to La Casse, for the reason that the movable member of the construction shown in Fig. 9 of La Casse is not a spring or spring-operated member, whereas the movable member in the Beckley patent is a spring-operated member."

This patent, granted in 1883, is for a lamp wick trimmer. Like Fig. 9 of La Casse it is operated by sliding one rigid member over the other. The spring referred to by defendant's expert consists of a piece of wire so engaged with the members as to cause the sliding member after being operated to automatically return to its retracted position. Its construction is so different from that of the patent in suit that it could not be adapted for use thereon, at least without the exercise of invention. In our opinion the closest references to the patent in suit are found in Fig. 11 of the La Casse patent and in the Heim & Matz reissued patent of 1881, No. 9,921, which may be considered together.

Complainant assumes in the discussion of these constructions that the members or spring arms are so resilient as to bend out of shape. But this is not necessarily so, especially to Heim & Matz, where the arms are preferably formed of a piece of plate steel. But its lever is

pivoted to a yoke. This yoke does not impart rigidity to a resilient member, and the short end of the lever does not extend through a perforation. The La Casse patent shows in Fig. 11 a lever attached to a bar which passes through openings in the two spring cutting members. There is, however, no means to impart rigidity to a resilient member. In both Beckley and La Casse the members are either both resilient or both rigid. If the former, the cam when operated with the yoke or bar would tend to bend both arms out of alignment, as there is nothing to support the resiliency of the members when the cutting pressure is exerted; if the latter, the invention of the patent in suit is wanting, for without the advantages of a spring action due to a resilient member there is no occasion for the strengthening operation of the short end of the lever. We conclude, therefore, that the construction of the patent in suit shows sufficient novelty to support the patent, although the invention is a very small and narrow one.

The defendant's nail cutter differs from that of the patent in having the short end of the lever located between the two members or arms, and so arranged as to operate in an upturned bail or staple extending from the lower or resilient arm. Its operation, so far as the issues herein are concerned, is identical with that of the patent. But defendant insists that its short end is not "extended through a perforation in the spring member," as claimed in the first claim. We cannot assent to this proposition. If the bail or staple consisted of an upturned perforated piece stamped out of the body of the lower member, instead of a separate piece, there would be no difference in construction. There is no difference in function, and, strictly speaking, the short arm does extend through a perforation in the spring member, namely, the eye of its staple. That the perforation is above instead of below the arm of the member is immaterial in view of its functional identity.

The second claim covers "means for confining the lever when turned down into the slot of the rigid member." The defendant does not use this means.

The decree of the court below is reversed as to the first claim, and affirmed as to the second claim, without costs of this court.