PHALEN, Appellant, vs. HERSHEY LUMBER COMPANY, Respondent.

*September 29—November 10, 1908.*

*Appeal: Review: Findings of fact by referee: Clerical errors: Exceptions: Logging contracts: Driving logs: Payment of damages to riparian owners.*

1. A finding of fact by a referee upon conflicting evidence will not be disturbed on appeal unless it is clearly against the preponderance of the evidence.

2. A specific finding of fact should be held to be controlling over another finding which is a mere recapitulation in figures of conclusions from facts previously found, where there is an evident clerical error or discrepancy in such figures.

3. An exception to a finding of fact "except quantity of logs driven and the ownership of the enumerated parts," does not authorize review of the part of the finding relating to the quantity of logs driven.

4. Plaintiff contracted to drive defendant's logs but became financially embarrassed and defendant took up the work and agreed to drive them at a reasonable price to be charged against plaintiff on the contract. During the drive defendant paid certain sums to riparian landowners who threatened to delay or prevent the drive unless damages for overflowing their lands were paid. The referee and trial court found that the danger of serious and prejudicial delay in the driving was apparently real and that the payments were necessarily made in order to enable the defendant to finish the drive within a reasonable time. There was evidence of an understanding between the parties that some such damages would probably have to be paid as a part of the expense of the drive. *Held* that, although there was no legal liability for such damages unless the drive was negligently made, reasonable payments of that nature were properly chargeable against plaintiff.

5. In an action upon a logging contract the evidence is *held* to show that plaintiff left in the woods a greater quantity of logs than that found by the referee, and that the reasonable charges for cutting and banking uncut and skidded logs and the expense of driving the same were considerably less than the amounts found by the referee.

APPEAL from a judgment of the circuit court for St. Croix county: E. W. HELMS, Circuit Judge. *Reversed.*

The plaintiff, a logging contractor, brought this action to recover a balance alleged to be due upon a written logging contract, afterwards modified by parol, as well as certain other sums for logging supplies, labor, and materials alleged to have been furnished to the defendant outside of the terms of the contract. The defendant admitted the execution of the original contract, but denied any modification thereof, and alleged that after partial performance the contract was abandoned by the plaintiff and that defendant was obliged to complete the same. The defendant also pleaded counterclaims for damage resulting from the alleged breach of the logging contract by the plaintiff and claimed an affirmative judgment against him.

The written contract was made October 17, 1899, and provided that during the logging season of 1899 and 1900 the plaintiff should cut, bank, put into Yellow river in Burnett county, Wisconsin, and drive to Nevers dam on the St. Croix river, all pine timber suitable for saw logs upon certain large tracts of land belonging to the defendant in Burnett county and described in the contract for the sum of $5.35 per thousand feet, board measure, the same to be scaled by a scaler to be mutually agreed on, and payments to be made as the work progressed up to the sum of $4 per thousand, the balance to be paid when all the logs were delivered at Nevers dam. Yellow river is a logging stream flowing through Burnett county and emptying into St. Croix river. Plaintiff established a log landing on Yellow river in section 12, town 39, range 15 west, and built a logging camp a few miles north of the landing. The landing was twelve miles below Rice Lake dam and just above a widening of the river called Widespread, which is about four miles long, filled with weeds and floating bog, except a crooked channel about 200 feet wide with little current, and the water is raised for driving purposes by floods from Rice Lake dam. About thirty miles below the landing is Yellow Lake dam, which forms a body of water about ten miles long and two miles wide, through

which it is necessary to boom logs which are being driven. The river empties into the St. Croix about ten miles below Yellow Lake dam, and Nevers dam is still further down on the St. Croix river. In the Widespread and in Yellow Lake driving operations are difficult and much affected by adverse winds.

The logging season of 1899 and 1900 was a fair average season, but there was much adverse wind during the driving season. The plaintiff commenced work in the fall of 1899, and at the end of the hauling season, about April 1, 1900, he had cut and banked 2,866,180 feet, board measure, and had also cut and skidded 1,500,000 feet, and there was left uncut an estimated amount of 100,000 feet. He was financially embarrassed, had insufficient equipment and help, and could not complete his contract. At some time about April 1, 1900, the plaintiff and C. H. Gardner, the defendant's agent in charge of the business, met at the logging camp and discussed the situation. The plaintiff claims that the written contract was then modified by parol agreement between himself and Gardner, to the effect that the defendant would accept the logs banked at the contract price, and excuse the plaintiff from driving them, that the defendant would accept the skidded logs in the woods at $2.50 per thousand, that the defendant should have the use of the plaintiff's dams upon the stream free of charge, and should drive all the logs, charging the plaintiff the reasonable cost of driving. The defendant claims, however, that at about this time the plaintiff was financially unable to proceed with the work, whereupon the defendant took up the work and agreed to drive the logs at a reasonable price to be charged against the plaintiff on the contract, the plaintiff to furnish his teams and driving outfit and the use of his dams, the defendant to return the personal property at the end of the drive.

Upon this question of fact, which was the leading question in the case, the referee found with the defendant's contention. The referee further found that the plaintiff turned over to

the defendant his driving outfit and that defendant drove all the banked logs to Nevers dam; that the whole of Yellow river is difficult for·driving purposes, and was particularly difficult in the season of 1899 and 1900 by reason of adverse winds, and that, by reason of damage to adjoining lands along the river caused by the overflows made necessary by the drive, there was great hindrance and expense resulting from the demand and collection of damages by riparian owners; that plaintiff turned over to the defendant his dams at Rice Lake and Yellow Lake, which were necessary for flooding purposes in the drive; that the same were out of repair; that the defendant necessarily spent $457 in repairing them and used them during the seasons of 1900 and 1901, and that one half of the cost of such repairs should be charged to the plaintiff; that in order to make the drive within a reasonable time it was necessary, to the knowledge of the plaintiff, to pay to property owners damages amounting to $635 on account of the flooding of adjoining lands caused by the drive.

By his eleventh finding the referee found that the defendant drove out of Yellow river in the spring of 1900 in all 3,538,070 feet of logs, of which 2,866,180 feet were logs cut and banked by the plaintiff under the contract, 353,330 feet were logs belonging to one Staples, and 318,560 feet were defendant's logs not covered by the contract but cut by other persons; that the entire cost of this drive was as follows:

| | |
|---|---:|
| General expense | $4,293 62 |
| Paid for damages caused by flowing | 635 00 |
| One half cost of repairing dams | 228 50 |
| Total | $5,157 12 |

that the amount chargeable to plaintiff of this sum, in proportion to the number of contract logs driven, was $4,177.79, and adding to this $286.61, the cost of driving on the St. Croix, he found a total of $4,464.40 chargeable to the plaintiff, which was the reasonable cost of driving the logs cut and banked by the plaintiff under his contract.

By the twelfth finding it was found that the plaintiff

breached his ·contract by not banking the logs skidded in the woods and by not cutting all of the timber and by not driving· the same; that defendant cut the remaining timber and banked the same together with the skidded logs, the total amount being found to be 1,376,620 feet, and drove the same to Nevers dam in the spring of 1901; that the reasonable expense of this cutting and banking was $2,723.54, and the reasonable cost of driving to Nevers dam was $3,658.71.

By the thirteenth finding it was found that the defendant had suffered damages resulting from plaintiff's default in the sum of $1,500, and by the fourteenth finding that the logging season of 1899 and 1900 ended July 1, 1901, before which date the defendant had driven all the logs left by the plaintiff not driven in 1900.

By the fifteenth finding the credits to the plaintiff and defendant were stated as follows:

### Credits to Plaintiff.

| | |
|---|---:|
| 2,866,180 feet of logs banked ............................ | $15,334 06 |
| 1,376,920 feet skidded or not cut ........................ | 7,364 91 |
| Supplies furn. at deft's request ......................... | 206 69 |
| 87 boom chains ......................................... | 60 00 |
| 20 blankets ............................................ | 12 00 |
| 600 feet of rope ....................................... | 45 00 |
| One anchor ............................................ | 24 00 |
| One half scaler's wages ................................ | 207 68 |
| One four-horse team 26 days ........................... | 78 00 |
| Board and goods furn. deft's agt. ...................... | 40 65 |
| Sup chg plff. afterwards sold by deft ................... | 32 48 |
| 2 batteaus not returned ................................ | 30 00 |
| Total ........................................... | $23,435 47 |

### Credits to Defendant.

| | |
|---|---:|
| Moneys advanced on logging account in 1899–1900 ...... | $13,461 20 |
| Labor and sup. on drive of 1900 ........................ | 4,293 62 |
| One half cost of repairs on dam ........................ | 228 50 |
| Damages paid chargeable to drive of 1900 ............... | 635 00 |
| Cost of drive of 1900 on St. Croix ...................... | 286 61 |
| Cutting and banking uncut and skidded logs ............ | 2,753 24 |
| Driving logs, drive of 1901 ............................. | 3,658 71 |
| Damages on account of failure of plff. to perform and complete contract ...................................... | 1,500 00 |
| Total .................................:........... | $26,816 88 |

By the sixteenth finding it was found that the balance in favor of defendant was the sum of $3,381.41, which became due July 1, 1901. As conclusions of law the referee found that the defendant was entitled to judgment for the last-named sum, with legal interest from July 1, 1901.

The plaintiff filed various exceptions to the findings of the referee, by which he excepted to the conclusion of the referee as to the alleged modification of the contract and as to the plaintiff's inability to carry out the same. He also excepted to the whole of the eleventh finding, "except quantity of logs driven and ownership of the enumerated parts;" to that part of the twelfth finding which fixed the reasonable cost of cutting, banking, and driving the remaining logs in the spring of 1900, and fixing the total amount thereof at 1,376,620 feet; to the whole of the thirteenth finding; to the fifteenth finding as far as it finds the quantity of skidded logs to be 1,376,620 feet, and because it fails to find and allow a number of items claimed by plaintiff for supplies furnished and articles converted by the defendant, and fails to find on the question whether the oral agreement in 1900 included the allowance of a stipulated sum for logs cut and not banked, and whether plaintiff was released from further performance of his written contract. He also excepted to the whole of that part of the fifteenth finding stating the defendant's credits, and to the whole of the sixteenth finding.

The plaintiff also moved to vacate the referee's report for prejudice, for failure to find upon various issues, and because the findings were against the evidence, and also moved, in case the motion to vacate were denied, that the court find on all the issues and modify the referee's report accordingly. The defendant moved for confirmation of the report and for judgment thereon, and all the motions were heard together. The motion to vacate was denied, but the court made additional findings, most of which were simply specific adverse findings as to a number of the claims of the plaintiff which

were not expressly, although impliedly, rejected by the referee. The court, however, struck out three items from the defendant's claim, as follows: The item of $1,500 damages allowed to defendant, the item of $228.50 for one half of the cost of repair of dams, and the sum of $204.14 from the general expense of the drive of 1900. Deducting these items from the amount allowed by the referee, the court ordered judgment for the defendant for $1,449.77, with interest and costs. From judgment in accordance with these findings the plaintiff appeals.

*W. F. Bailey,* for the appellant.

For the respondent the cause was submitted on the brief of *L. H. Mead.*

WINSLOW, C. J. The errors assigned by the appellant are very numerous and all of them have been carefully examined. Such of them as are not specifically treated in this opinion must be considered as overruled, not as overlooked. The sweeping claim which is made to the effect that the referee's report should have been wholly set aside because of bias, prejudice, refusal to consider evidence, or similar grounds must be rejected without further comment than to say that we have discovered no reason to doubt that the referee, while evidently mistaken as to some of his conclusions, as will appear later, attempted to give the case a fair, conscientious, and painstaking trial. The claim that the referee erred in finding that the oral modification of the written contract alleged by the plaintiff to have been made in the spring of 1900 was not in fact made must also be overruled. Upon this question there was a direct conflict of evidence between the plaintiff on one side and Mr. Gardner, the defendant's agent, upon the other; and, while there was some evidence from other witnesses tending to corroborate the plaintiff's story, still we are unable to say that the referee's conclusion was clearly against the preponderance of the evidence.

Passing from these general claims of error, we proceed to take up the more specific claims in their natural order.

1. There are some very palpable and important discrepancies or contradictions between the referee's eleventh and fifteenth findings of fact which were entirely overlooked by the trial court. By the eleventh finding the referee found that the total amount of logs driven by the defendant in 1900 was 3,538,070 feet (of which 2,866,180 feet were the logs cut and banked by the plaintiff, 353,330 feet were logs belonging to one Staples, and 318,560 feet were defendant's logs cut by others than the plaintiff), and that the total reasonable expense of the whole drive down to the St. Croix river was as follows:

| | |
|---|---:|
| General expense of drive | $4,293 62 |
| Paid for damages to owners of overflowed lands | 635 00 |
| Paid one half cost of repairing dams | 228 50 |
| Total | $5,157 12 |

The referee further found in this finding that of this total the plaintiff should be charged with the same proportion as the amount of the logs cut by him bore to the whole amount of logs driven, which proportionate share was found to be $4,177.79. This was manifestly the correct theory on which to determine the proper charge against the plaintiff, but when the referee came to state the credits to be allowed to each party in the fifteenth finding he credited to the defendant the whole expense of the drive of 1900, to wit, $5,157.12, instead of the proportionate amount as determined by the eleventh finding, to wit, $4,177.79. The error here is manifest, and it is equally manifest that the eleventh finding, which is a specific finding of fact, must be held to be controlling over the fifteenth, which is a mere recapitulation in figures of conclusions from the facts previously found. It was evidently a clerical error or discrepancy which should have been corrected without formal exception, but for some reason it remained unnoticed by the court. The court upon review

simply held that two items amounting to $204.14 were improperly included in the general expense of the drive, and that the charge of $228.50 for repairs of dams should not have been allowed, and with these deductions approved the charges for the drive contained in the fifteenth finding. The mere statement of the facts shows the error. The eleventh finding, except so far as its items were changed by the court, must control. Striking out of the expense of the drive the items disallowed by the court, we find that the total cost of the drive of 1900 was $4,724.48 and that the plaintiff's proportionate share thereof was $3,827.21, which should be charged against him, instead of $5,157.12 as charged by the referee, or $4,724.48 as charged by the court. In connection with this item another contention is made, which if sustained would further reduce the amount to be charged against the plaintiff on account of the drive of 1900. It is said that the amount of the Staples logs was 452,000 feet instead of 353,330, and the evidence on the subject, though meager, seems to substantiate the claim. We find, however, no exception which authorizes us to review this finding. In his exceptions to the findings of the referee the plaintiff excepted to the eleventh finding of fact, "except quantity of logs driven and the ownership of the enumerated parts," thus specifically omitting to find any fault with the finding as to the quantity of logs driven. We find no other exception in the record which raises this question, hence we conclude that it is not now open.

2. It is claimed that the item of $635 for damages paid by the defendant to a number of riparian landowners should not have been allowed. The referee found that these payments were necessarily made in order to enable the defendant to finish the drive within a reasonable time. The testimony in support of the item is to the effect that, after the logs had reached Yellow Lake, the defendant was threatened by a number of landowners that, unless damages for the overflow-

ing of their lands were paid them before the logs got through the lake, they would cut the booms or tear out the dam, and that under the stress of these threats the sums were paid. It is quite true that there was no legal liability for such damages unless the drive was negligently made (*Field v. Apple River L. D. Co.* 67 Wis. 569, 31 N. W. 17), and we have had some doubt about the allowance of this item. If, however, the danger of serious and prejudicial delay in the driving of the logs was apparently real and the defendant's apprehension well founded, as the referee and the court concluded, we incline to the view that reasonable payments of this nature were justifiable and properly allowed. We reach this conclusion more readily in view of the fact that Gardner testified that, before the defendant undertook the drive, he talked with *Phalen* on the subject, and that it was understood that some damages would probably have to be paid as a part of the expense of the drive.

3. The referee credited the plaintiff at the contract rate with 1,376,920 feet of logs, which he found to be the total amount of logs left in the woods by the plaintiff either skidded or not cut. The plaintiff claims that the amount of skidded logs was shown without serious dispute to be 1,500,000 feet and his claim seems to be correct. The complaint alleged that the amount was 1,500,000 feet. The first counterclaim in the answer alleged that the plaintiff cut and left in the woods 1,500,000 feet. The referee found in his sixth finding that the plaintiff left in the woods, cut and skidded but not banked, 1,500,000 feet, and a scaler testified directly that he ascertained the quantity and found it to be 1,500,000 feet. As against this there was simply an entry in an account book of the defendant, which was not verified by any one with knowledge of the facts, which recited the number of feet as 1,376,620, and the opinion of one Gray, who banked the logs in 1901, that the total amount was about 1,370,000 feet. In this state of the pleadings and proof

there can be no doubt that the plaintiff should have been credited with 1,500,000 feet, which would give him an additional credit of $660.09.

4. The last items complained of which we find it necessary to consider at any length are the credit to defendant of $2,753.24 for cutting and banking uncut and skidded logs and the credit of $3,658.71 for driving the last-named logs in the log drive of 1901. These charges were found by the referee to be just, fair, and reasonable prices for the work done, and the question is whether such findings are sustained by the evidence. Upon this question we receive no aid from the respondent's brief, although it is quite fully argued in the appellant's brief with references to the printed case. This has necessitated a wearisome examination, page by page, of the bill of exceptions, without aid from the respondent, in the effort to ascertain what testimony was given on the question, an effort which this court ought not to be compelled to make. The evidence as to the reasonable value of banking the skidded logs is very meager. No witness appears to have testified directly as to the reasonable value of such work. One Gray did the work under a written contract for $3 per thousand, and the defendant claimed credit for this amount, but there was no testimony that this was a fair or reasonable price. The work consisted simply of hauling the logs from the skids in the woods to the river. A man with a four-horse team made two or three trips a day according to the distance. A little over 100,000 feet of the amount was still standing and had to be cut, but no difference was made in the contract price on this account. There is testimony as to the amount which a team thus employed would haul and as to the expense of the team and man, and from this it appears that the total expense of banking the skidded logs could hardly exceed $1 per thousand. Making all due allowance for the cutting of the small amount of standing timber and for unexpected delays or circumstances

interfering with the work, we are unable to see how a charge in excess of $1.50 per thousand can be sustained. On this basis this item should be allowed at $2,250, a reduction of the referee's credit of $503.24.

The evidence as to the reasonable expense of the drive of 1901 is, if anything, more meager and unsatisfactory than the evidence as to the banking of the skidded logs. These logs formed a part of a large drive made by the defendant. The defendant's manager, Mr. Campbell, testified that the total cost of the drive was $10,631, and that the total amount of logs driven was 3,500,000 or 4,000,000 feet, but just what the amount was he was unable to tell. His recollection was that the expense was about $2.30 per thousand, and here his evidence practically ceases. There were no difficulties shown in driving the river in 1901 greater than those present in 1900. About two thirds of the skidded logs were landed by Gray nearly twenty miles below the landing where *Phalen* banked his logs, and consequently escaped many of the difficulties of the drive. The total cost of the drive of 1900, including damages paid and repair of dams, was but $1.45 per thousand feet, and the defendant charged Staples but fifty cents per thousand. Two experienced river drivers, Saunders and Lampman, testified on behalf of defendant as to the cost of driving logs from McDonald's bar to the St. Croix river, and fixed it at $1.60 and $1.50 respectively. In view of this testimony the allowance of the referee seems entirely too large. Adopting the highest figure placed by the defendant's witnesses, viz., $1.60 per thousand, we find that this item should be $2,400 instead of $3,658.71, a reduction of $1,258.71.

We have now stated all the changes which we find it necessary to make in the account and are ready to state the result.

Adopting the method used by the trial court and taking the referee's statement of account in the fifteenth finding as a basis, there should be added to the credit side of the plaint-

iff's account for the skidded and uncut logs $660.09, making the total of the credit side $24,095.56, and there should be deducted from the debit side the excess charged on the drive of 1900, $1,329.91; the excess charged on the banking of skidded and uncut logs in 1901, $503.24; the excess charged on the drive of 1901, $1,258.71; the damages allowed by the referee but disallowed by the court, $1,500; making a total reduction of $4,591.86, and reducing the total debits to $22,225.02. Subtracting the total debits from the total credits there remains a credit to the plaintiff of $1,870.54 for which he should have had judgment.

*By the Court.*—Judgment reversed, and action remanded with directions to enter judgment for the plaintiff for $1,870.54, as of the date of the former judgment, to wit, April 5, 1907.