CLARIDGE, Appellant, vs. EVANS, Trustee, Respondent.
EVANS, Trustee, Respondent, vs. CLARIDGE, Appellant.

*October 1—December 15, 1908.*

*Bankruptcy: Preference: Mortgages: Foreclosure: Property and rights of trustee in bankruptcy: Setting aside mortgage: Appeal and error: Review: Inconsistent findings, which controls: Debtor and creditor: "Reasonable cause to believe that a preference was intended."*

1. An action to foreclose a mortgage was defended on the ground that the mortgage was void as a preference under the federal bankruptcy act. It appeared, among other things, that the mortgage was given about two years before the petition in bankruptcy was filed, to one who was a managing officer of the bankrupt but not at the time a creditor, for the purpose of securing advances agreed to be made in order to enable the bankrupt to continue business; that the bankrupt was then in fact insolvent, as both parties knew, but the mortgage was made in good faith and both parties expected the business would be successfully carried on; that by innocent mistake the mortgage was not recorded until a few days before the bankruptcy proceedings, although the mortgagee supposed it was, and made his advances from time to time relying on his security; that the last two advances were made before the beginning of the four-months period immediately preceding the bankruptcy proceedings, and that for those advances foreclosure was claimed. *Held:*

(1) In the absence of fraud, actual or constructive, such mortgage, though unrecorded, gave to the mortgagee a lien upon the mortgaged property for the sums thereafter advanced under it, good as between the parties and as to all the world except subsequent purchasers or mortgagees in good faith and for a valuable consideration.

(2) The trustee in bankruptcy had no greater right to set aside the conveyance or transfer than the bankrupt himself had, except so far as the bankruptcy act empowered him to avoid such transactions in cases of actual or constructive fraud or in cases of preferences inhibited by the act.

(3) Under subd. *a* and *b*, sec. 60, and subd. *d*, sec. 67, of the federal bankruptcy act of 1898, the creditor was entitled to judgment of foreclosure.

SIEBECKER and KERWIN, JJ., dissenting, are of the opinion that the mortgage constituted a preference and hence was fraudulent and void under the federal bankruptcy act.

2. The giving of a mortgage or other security to secure the re-
payment of a present loan, or a loan to be made in the future,
is not a preference. In order to constitute a preference there
must be an existing antecedent debt upon which a payment is
made or for which security is given. A security given for a
debt created at the time is a present security and not a pref-
erence created by the mortgage.

3. A preference contemplates a class of existing creditors, one of
whom is singled out for preference.

4. The word "preference" means that one person is favored above
others who before the favor was shown stood on equal footing.

5. The concluding clause of subd. a, sec. 60, of the federal bank-
ruptcy act, which in effect declares that, if the local law re-
quires recording of the transfer, the four-months period during
which preferences are inhibited shall not expire until four
months after the date of the recording, does not define a pref-
erence nor purport to make a preference out of a transaction
which was not a preference before, and only applies where the
transfer itself constitutes a preference.

6. Where a debtor, when the four-months period under subd. a,
sec. 60, of the federal bankruptcy act began, owed the creditor
$5,000, and the creditor's security was only of the value of
$1,725, as to the sum of $3,275 the creditor was unsecured, and
he could not, with knowledge of his debtor's insolvency, retain
a payment on his unsecured debt within the four-months pe-
riod, where this would give him a greater percentage than any
other unsecured creditor.

7. In such case the debt of the creditor, after exhausting his se-
curity, became of the same class as all other unsecured con-
tract debts which are not given priority by the terms of the
bankruptcy act.

8. A specific finding directed to the special question of the time of
payment of specific notes is *held* controlling over the mere re-
capitulation of these notes with others contained in another
finding.

9. Where a creditor was the active manager of the entire business
of a bankrupt corporation from the time he accepted a mort-
gage securing him for advances to be made, up to the time of
the bankruptcy, and in fact was the only person who had per-
sonal and accurate knowledge of its affairs, and, as secretary,
in fact made the alleged preferential payments to himself, the
creditor was in effect both debtor and creditor, and whatever
he knew in one capacity he knew in the other.

10. In such case it appeared, among other things, that the complete
and practically hopeless insolvency of the corporation was
known to the creditor when he made payments to himself, and

he also knew that the effect of each payment was to enable him, as a creditor, to obtain a greater percentage of his debt than other creditors of the same class. *Held*, under subd. *a*, sec. 60, of the federal bankruptcy act, prescribing that a preference within the terms thereof is recoverable when the creditor shall have reasonable cause to believe that a preference was intended, that the creditor must be deemed to have known that all the facts existed which were necessary to condemn the payments as preferential and as so intended.

11. In such case it is *held* that the omission of any finding to the effect that the creditor had reasonable cause to believe that a preference was intended when the payments were made is not ground for reversal of a judgment in favor of the trustee in bankruptcy for the recovery of such preference.

APPEALS from judgments of the circuit court for Sauk county: JAMES O'NEILL, Judge. *Reversed on one appeal; affirmed on the other.*

These actions involved the same transactions and were tried on the same testimony. The first action was brought upon leave, duly obtained, to foreclose a mortgage upon real estate given to *Claridge* by the Clover Creamery Association, a bankrupt corporation, and the second was brought by the trustee of the bankrupt to recover payments made by the association to *Claridge* before the bankruptcy. Both transactions were claimed by the trustee to be unlawful preferences under the provisions of the bankrupt law. The actions were tried by the court and the facts were not materially disputed, being found by the trial court substantially as follows: For some time prior to December, 1904, the Clover Creamery Association was a corporation doing business in Sauk county, and continued to transact business up to October 25, 1906, when a petition in bankruptcy was filed in the proper federal court by creditors, and on February 18, 1907, it was adjudged a bankrupt, and the respondent, *Evans,* appointed trustee. On December 16, 1904, it was in fact insolvent, being largely indebted to its patrons and also to the Bank of Reedsburg upon notes and overdrafts, and the bank was unwilling to extend further credit. *Claridge* was then secretary

of the corporation and knew of its insolvent condition.   On
the last-named date it was agreed between *Claridge* and the
directors of the company in good faith that *Claridge* should
advance to the company not exceeding $4,000, in sums as
needed, to discharge its indebtedness, and should take the
note of the company for that sum, running three years,
secured by a mortgage upon the real estate of the company,
the note and mortgage to be continuing securities.   By this
agreement *Claridge* was to give his own personal notes to the
bank from time to time as needed, the proceeds to be placed
to the credit of the company, and the notes so given to be paid
by the company out of its moneys in the bank as fast as
practicable.   The $4,000 note and mortgage were duly ex-
ecuted and delivered by the company to *Claridge* on the day
last named.   Thereafter, and in reliance on this note and
mortgage, *Claridge* gave his notes to the bank at various
times during the years 1904 and 1905 for various sums,
the proceeds of which notes were credited to the com-
pany and paid out of the funds of the company in the bank
prior to June 25, 1906, and no question is raised as to the
validity of such payments in these actions.   Two notes of
$1,000 and $1,500, respectively, fell due June 1, 1906.   The
first of these notes was paid out of the funds of the com-
pany in the bank, by a check drawn by *Mr. Claridge* as secre-
tary, June 29, 1906, and the second was paid in the same
way August 25, 1906.   Two other notes placed in the bank
by *Claridge* to the credit of the company, one dated January
16, 1906, for $1,000, and one dated April 2, 1906, for
$1,500, also fell due June 1st, but neither of them was ever
paid by the company.   Both were paid by *Claridge* December
24, 1906, and the foreclosure action is brought to enforce
a mortgage lien for these sums.   Upon receiving the
mortgage on December 16, 1904, *Claridge* gave it to Mr.
Gottry, a reputable attorney of Reedsburg, to place the same
on record at Baraboo, and paid him the recording fees.   Mr.
Gottry, however, by oversight mislaid the mortgage, and for-

got its existence until by chance he found it among his papers October 19, 1906, when he immediately caused it to be recorded. At this last-named date the company was insolvent and in financial difficulties, to the knowledge of *Claridge* but not to the knowledge of Gottry, and Gottry had no intention of gaining a preference for *Claridge* when he recorded the instrument. *Claridge* did not know of Gottry's failure to promptly record the mortgage and always supposed it had been promptly recorded. The company was insolvent at all times within the period of four months next preceding the filing of the petition in bankruptcy on October 25, 1906. The mortgaged property was sold by the trustee free of incumbrance, by order of the bankruptcy court, for the sum of $1,725, which is in the hands of the trustee, and that court by order permitted the bringing of the foreclosure action against this fund with the same effect as if brought against the mortgaged property. Upon these facts the court held in the foreclosure action that the mortgage was a preference and void under the bankrupt law, and in the preference action held that the trustee was entitled to recover, as preferential payments, the amounts paid out of the funds of the company to take up the two notes before mentioned on June 29 and August 25, 1906, respectively, as well as the sum of $50.24 which was paid to *Claridge* on the 25th of October, 1906, for cream sold by him to the company in August, amounting in all to $2,573.79. Judgments being entered in accordance with these findings, *Claridge* appeals in both cases.

For the appellant there were briefs by *Tenney, Hall & Tenney,* and oral argument by *F. W. Hall.*

For the respondent there was a brief by *Richmond, Jackman & Swansen,* and oral argument by *S. T. Swansen.*

The following opinion was filed October 20, 1908:

WINSLOW, C. J. In the foreclosure action the question is whether the mortgage of December 16, 1904, is void as a

preference under the provisions of the bankrupt act. The mortgage was given nearly two years before the petition in bankruptcy was filed, to one who was not at the time a creditor of the company, and for the purpose of securing advances which the mortgagee agreed to make to enable the company to continue its business. The company was then in fact insolvent, as both parties knew, but the mortgage was made in good faith and both parties expected that the business would be successfully carried on. By innocent mistake the mortgage was not recorded until a few. days before the bankruptcy proceedings, although the mortgagee supposed it was, and made his advances from time to time relying on his security. The last two advances were made before the beginning of the four-months period immediately preceding the bankruptcy proceedings, and for these advances foreclosure is claimed.

There can be no doubt that, in the absence of fraud, actual or constructive, this mortgage, though unrecorded, gave to the mortgagee a lien upon the mortgaged property for the sums thereafter advanced under it, good as between the parties and as to all the world except subsequent purchasers or mortgagees in good faith and for a valuable consideration. Secs. 2203, 2209, 2241, 2242, Stats. (1898); *Mathwig v. Mann,* 96 Wis. 213, 71 N. W. 105; *Wis. P. M. Co. v. Schuda,* 72 Wis. 277, 39 N. W. 558. It is familiar law that the trustee in bankruptcy takes the bankrupt's property subject to all the equities impressed upon it in the hands of the bankrupt, unless otherwise provided in the bankrupt act. In other words, he has no greater right to set aside conveyances or transfers than the bankrupt himself had, except in so far as the bankrupt law empowers him to avoid such transactions in cases of actual or constructive fraud or in cases of preference inhibited by the act. *Security W. Co. v. Hand,* 206 U. S. 415, 27 Sup. Ct. 720; *Eastman v. Parkinson,* 133 Wis. 375, 113 N. W. 649. No actual or constructive fraud

is claimed in the present case, but the only claim is that the mortgage constituted a preference within the meaning of subd. *a* and *b* of sec. 60 of the national bankruptcy act of 1898 (Act July 1, 1898, ch. 541, 30 U. S. Stats. at Large, 562, U. S. Comp. Stats. 1901, p. 3445), as amended by the act of February 5, 1903 (ch. 487, sec. 13, 32 U. S. Stats. at. Large, 799, U. S. Comp. Stats. Supp. 1907, p. 1031). Sec. 60*a* provides that:

"A person shall be deemed to have given a preference if, being insolvent, he has, within four months before the filing of the petition, or after the filing of the petition and before the adjudication, procured or suffered a judgment to be entered against himself in favor of any person, or made a transfer of any of his property, and the effect of the enforcement of such judgment or transfer will be to enable any one of his creditors to obtain a greater percentage of his debt than any other of such creditors of the same class. Where the preference consists in a transfer, such period of four months shall not expire until four months after the date of the recording or registering of the transfer, if by law such recording or registering is required."

Subd. *b*, sec. 60, provides that:

"If a bankrupt shall have given a preference, and the person receiving it, or to be benefited thereby, or his agent acting therein, shall have had reasonable cause to believe that it was intended thereby to give a preference, it shall be voidable by the trustee, and he may recover the property or its value from such person."

The mortgagee here knew that the company was insolvent. at the time the mortgage was given as well as at the time it. was recorded, and the trustee claims that, though it was given nearly two years before the bankruptcy proceedings were commenced, still, because it was not recorded until a few days before the petition was filed, it becomes a voidable preference by virtue of the last clause of subd. *a*, sec. 60. The fundamental difficulty with the trustee's contention is that the sections deal with *preferences* alone, not with all business transactions, and the giving of a mortgage or other

security to secure repayment of a present loan, or a loan to be made in the future, is not a preference. In order to constitute a preference there must be an existing antecedent debt upon which a payment is made or for which security is given. A security given for a debt created at the time is a present security and not a preference created by the mortgage. This seems clear from the language of the sections as well as from consideration of the evil intended to be averted thereby. A preference, as defined by the statute, is a transfer which will enable any one of the insolvent's *creditors* to obtain a greater percentage of his debt than other *creditors* of the same class. It contemplates a class of existing creditors, one of whom is singled out for preference. The evil which was to be averted was the diminution of the bankrupt's estate by a transfer to a favored creditor to the detriment of other creditors of the same class. The idea of the bankrupt law is that the bankrupt's whole estate should go to the benefit of all his creditors equally, except as priority of certain kinds of claims may be provided for by the act, and that hence the bankrupt should not be allowed to diminish the common fund within four months before his bankruptcy by giving a preference to one creditor who has reason to believe that insolvency exists. When, however, a mortgage is given for a present loan of money to go into the bankrupt's business, there is no diminution of the estate. Indeed, that very act may amount to a practical enlargement of the estate and enable the insolvent to rescue his business from threatened ruin, and thus save all his creditors from loss. Thus Judge DILLON well said in *Darby's Trustees v. Boatman's Sav. Inst.* 1 Dill. 141, Fed. Cas. No. 3,571, under the old bankrupt law (which also contained provisions condemning preferences) :

"An insolvent person may properly make efforts to extricate himself from his embarrassments, and therefore he may borrow money and give *at the time* security therefor, provided always the transaction be free from fraud in fact and

upon the bankrupt act; and hence it is a settled principle of bankrupt law, both in England and in this country, that advances, made in good faith to a debtor to carry on business upon security taken at the time, do not violate either the terms or policy of the bankrupt act."

This principle is definitely laid down and approved in the cases of *In re Wolf,* 98 Fed. 74; *In re Clifford,* 136 Fed. 475; *First Nat. Bank v. Pa. T. Co.* 124 Fed. 968, and *In re Noel,* 137 Fed. 694, and in effect in *Rogers v. Page,* 140 Fed. 596. In the *Noel Case* the court said: "As to the question of preference under the bankrupt act, it is clear that a present loan on security is not a preference"—citing sec. 67, subd. *d* (Act July 1, 1898, ch. 541, 30 U. S. Stats. at Large, 565, U. S. Comp. Stats. 1901, p. 3449), of the bankrupt act, which reads as follows:

"Liens given or accepted in good faith, and not in contemplation of or in fraud upon this act, and for a present consideration, which have been recorded according to law, if record thereof was necessary in order to impart notice, shall not be affected by this act."

The very word "preference" means that one person is favored above others who before the favor was shown stood on equal footing. Bouvier defines it as "the paying or securing, to one or more of his creditors, by an insolvent, the whole or part of their claim to the exclusion of the rest." This seems entirely clear, and probably there would have been no attack on the mortgage were it not for the concluding clause of subd. *a,* sec. 60, which in effect declares that if the local law requires recording of the transfer, the four-months period during which preferences are inhibited shall not expire until four months after the date of the recording. But this clause does not define a preference, nor purport to make a preference out of a transaction which was not a preference before. It only applies where the transfer itself constitutes a preference. In order to ascertain what a preference in

fact is, we must go to the first part of the section, which, as we have seen, defines it in accordance with the natural meaning, namely, a transfer to one creditor out of a class. So we are not concerned here with the last clause, because it only refers to preferences, and there has been no preference to which it can apply. The construction of this last clause, especially with regard to the scope of the words "if by law such recording or registering is required," has occupied the attention of several of the inferior federal courts with varying results. In the Northern District of New York it was held, under registry laws practically identical with our own, that a real-estate mortgage was not *required* to be recorded within the meaning of the clause in question, and hence that such a mortgage, given in good faith more than four months before the bankruptcy proceedings, but not recorded until just before the petition was filed, could not be invalidated as a preference. *In re Hunt,* 139 Fed. 283. A contrary result was reached, under substantially different registry laws, in *English v. Ross* (M. D. Pa.) 140 Fed. 630. In a number of cases in the inferior federal courts it has been held, in reference to chattel mortgages, that where the state law · requires them to be recorded in order to validate them as against creditors or purchasers in good faith, although valid between the parties, they are *required* to be recorded within the meaning of the bankrupt act. *First Nat. Bank v. Connett,* 142 Fed. 33; *Loeser v. Sav. D. Bank,* 148 Fed. 975; *In re Reynolds,* 153 Fed. 295. In these cases the clause in question was held applicable. In the first two the mortgages were given to secure existing debts. In the last case, however, the mortgage was given to secure a present loan, and so the case may rightly be said to be in some sense an authority in support of the trustee's contention here. It is to be noted, however, that the point that the transaction was not a preference of a creditor at all was neither suggested nor considered in the case, and that the law of Arkansas, which governed the

mortgage, provided that no mortgage should be a lien on the mortgaged property until actually filed in the proper office, while in Wisconsin a chattel mortgage is a valid lien as between the parties though never filed, and a real-estate mortgage given in good faith is valid as to all the world, except subsequent purchasers in good faith, though never recorded. But we should not feel inclined to follow these authorities, even if they were exactly in point. When the supreme court of the United States decides that the preference section in the bankrupt law applies to such a transaction as the giving of the mortgage in the present case, we shall of course bow to that decision. Until that time we shall follow what seems to us the correct principle as laid down in this opinion. The result is that *Claridge* was entitled to a judgment of foreclosure against the fund in court.

Passing to the action to recover the preferential payments made within the four-months period, we find a different question. These were payments made upon an antecedent debt. True it was a secured debt, but only to the amount of the security. On June 25, 1906, when the four-months period began, the company owed *Claridge* $5,000 and his security was only of the value of $1,725. Thus, as to the sum of $3,275, *Claridge* was an unsecured creditor, and he could not, with knowledge of his debtor's insolvency, obtain a valid preferential payment on his unsecured debt within the four-months period, because this would give him a greater percentage than any other unsecured creditors, of whom there were a considerable number. After exhausting his security his debt is of the same class as all other unsecured contract debts which are not given priority by the terms of the bankrupt act. The judgment in the second action was therefore correct.

It follows that in the foreclosure action the judgment must be reversed, with costs, and the action remanded with directions to enter judgment of foreclosure against the fund

in court, while in the trustee's action to recover the preferential payments the judgment must be affirmed, with costs.

*By the Court.*—It is so ordered.

The following opinion was filed November 10, 1908:

SIEBECKER, J. (*dissenting*). I cannot concur in the court's holding that, under the provisions of the bankruptcy act, as amended February 5, 1903, *Claridge* did not secure a preference under the mortgage recorded October 19, 1906. It is conceded that the mortgagee knew that the mortgagor was insolvent at the time the mortgage was given as well as when it was recorded. A mortgage given by a debtor, either to secure payment of a present loan or to secure future advancements, whether given within or prior to the four months before the filing of the petition in bankruptcy, creates no preference under the bankruptcy act, but a mortgage so given to one of a class of creditors to secure a prior debt creates a preference, in that such mortgage creditor is thereby taken from a class of creditors for preference. Unless such a mortgage was void under the local law, such a preference, before the amendment of February 5, 1903, could only be attacked if given within the four months immediately preceding the filing of the petition in bankruptcy. This state of the law permitted debtors to give security to favored creditors by keeping the instruments off the record and thereby to conceal the fact of such preference from existing and subsequent creditors. Such a practice was well calculated to lull such other creditors into a sense of security as to the debtor's financial responsibility and to induce the belief that all his creditors stood on an equality as to payment out of his estate. In fact, it afforded an opportunity to give a secret preference to some one or more of the same class of creditors and resulted in inequities among the members of such a class, if, by not recording such security, its giving could be kept secret

for four months. The amendment of February 5, 1903, it seems to me, was intended to prevent such secret securities. By such amendment (sec. 60) the bankruptcy act declared, in effect, that if an insolvent, within four months before the filing of the petition, should transfer any of his property and thereby enable a creditor to obtain a greater per cent. of his debt than others of the same class, it should be declared a preference; and, "where the preference consists in a transfer, such period of four months shall not expire until four months after the date of the recording or registering of the transfer, if by law such recording or registering is required." As I view it, this court gives no other effect to the amendment than to hold that the validity of a transfer, made prior to the four months pending the filing of the petition but recorded within that period, may be assailed as of the date when the transfer was made. The language of the amendment, when applied to what precedes it, discloses an apparent intent by Congress to make the time of recording the time of transfer of the property covered by the instrument of transfer, instead of the time when the transfer would be effectual under the local law. Under the amendment of February 5, 1903, the validity of a voidable preference should, I think, be determined as of the day on which the mortgage was recorded, which in this case is October 16, 1906, instead of the day of its delivery to *Mr. Claridge,* December 16, 1904. These facts present a case of a transfer within the four months prior to the filing of the petition in bankruptcy, when the mortgagor was insolvent to the knowledge of the mortgagee, and, under the ruling of the court, enables *Mr. Claridge* to obtain a greater percentage of his pre-existing claim than the other creditors of the same class. Under the circumstances the mortgage was fraudulent within the provisions of the bankruptcy act, and the trustee should be entitled to judgment declaring it void, and awarding him the amounts applied within the four months before the filing

of the petition in bankruptcy, in payment of the debt secured by it, as adjudged by the lower court. I deem the following cases, referred to in the opinion of the court, as controlling and supporting these conclusions: *First Nat. Bank v. Connett*, 142 Fed. 33; *In re Reynolds*, 153 Fed. 295; *English v. Ross*, 140 Fed. 630.

The mortgage, in view of the provisions of the law of this state for recording mortgages, is an instrument required to be recorded within the meaning of the amendment of February 5, 1903. As held in the *English Case, supra*, the amendment contemplates that instruments shall be recorded whenever recording is necessary to protect the transferee against subsequent purchasers, even though such instruments may be valid between the parties thereto without recording. The mortgage to *Claridge*, in my opinion, should be judged, on the question of preference, as if executed and delivered on the day it was recorded. When so considered, it results in a preference under the established facts, and it is fraudulent and void under the bankruptcy act.

KERWIN, J. I concur in the foregoing dissenting opinion of Mr. Justice SIEBECKER.

The following opinion was filed December 15, 1908:

WINSLOW, C. J. The appellant moves for a rehearing in the action brought by the trustee to recover the preferential payments made within the four-months period, and urges two grounds, viz.: (1) That the note of $1,000, which is said in the statement of facts to have been paid June 29th, was in fact paid June 23d, and hence was not paid within the four-months period; and (2) that there is no finding to the effect that *Claridge* had reasonable cause to believe that a preference was intended when these payments were made, and hence that there can be no recovery under subd. *b*, sec. 60,

of the bankruptcy act.    Act July 1, 1898, ch. 541, 30 U. S.
Stats. at Large, 562 (U. S. Comp. Stats. 1901, p. 3445).

1. As to the first claim, the matter must be considered as
settled adversely to the appellant's contention by finding of
fact number 17 in the preference action, to which there was
no exception.    That finding says that on the 29th day of
June, 1906, *Claridge* paid to himself from the funds of the
association $1,003.80 as payment in full of a note of $1,000
and interest secured by the mortgage, and that on the 25th
day of August, 1906, he paid to himself $1,519.75 as pay-
ment in full of the $1,500 note, and that at both times he
knew the association to be insolvent.    It is true that in the
seventh finding a list is given of the various notes given under
the mortgage, with their respective dates of payment, and
that in such list the $1,000 note has opposite to it, as the date
of payment, "June 23, 1906."    This makes an apparent con-
tradiction in the findings, but the seventeenth finding, being
a specific finding directed to the special question of the time
of payment, must be held as controlling over the mere re-
capitulation of the notes contained in finding 7.    *Phalen v.
Hershey L. Co.* 136 Wis. 571, 118 N. W. 219.    An error in
printing the cases in the two actions may here be noted which
may account for the misapprehension of appellant's counsel
on this point.    In both printed cases the findings in the fore-
closure action are printed as the findings of the court, and
these findings did not contain finding 17 as above quoted, but
an entirely different proposition.    We were obliged to go to
the record in the preference action to find the correct find-
ings.

2. It is true that the statute requires that a preferred
creditor must have had reasonable cause to believe that a
preference was intended at the time of receiving his pref-
erence before the same can be set aside, and it is equally true
that in the present case there was no finding that *Claridge*
had such cause, either on the 29th of June or on the 25th of
August, but only that he had such cause on the 19th of Octo-

ber, when the mortgage was recorded. This was evidently upon the theory that his rights were to be determined solely by the situation at the time of the recording of the mortgage. The court, however, found that the association was insolvent, to the knowledge of *Claridge,* at the time the mortgage was executed, and was also insolvent at all times within the four months immediately preceding the bankruptcy proceedings, which fact was also within the knowledge of *Claridge.* It also appeared without dispute that *Claridge* was the active manager of the entire business of the association from the time of the giving of the mortgage up to the time of its bankruptcy, and in fact was the only person who had personal and accurate knowledge of its affairs; and further, that as secretary he in fact made the preferential payments to himself. Thus he was, in effect, both debtor and creditor, and whatever he knew in one capacity he also knew in the other. The complete and practically hopeless insolvency of the association was known to him when he made the payments to himself, and it was also known to him that the effect of each payment was to enable himself as creditor to obtain a greater percentage of his debt than other creditors of the same class. Thus at the time he made the payments he knew that all the facts existed which are necessary to constitute a preferential payment under subd. *a,* sec. 60, of the bankruptcy act. In order that a preference within the terms of subd. *a,* sec. 60, should be recoverable, the statute only requires that the creditor should have reasonable cause to believe that a preference was intended. 1 Remington, Bankruptcy, § 405. Could a creditor, to whom the utterly insolvent and practically hopeless condition of his debtor had been fully explained, at the time he received a payment or transfer, be heard to say with any reason that the facts known to him did not give him reasonable cause to believe that a preference was intended? We think not. A finding to the contrary could hardly be sustained, and hence the motion for a rehearing must be denied.

*By the Court.*—It is so ordered.