COLONIAL BANK, Plaintiff-Respondent,

v.

MARINE BANK, N.A., f/k/a Marine National Exchange Bank, Defendant-Appellant,

Tapio TULISAARI, Berit Tulisaari, First Mercantile Corporation, Max Gorwitz & Sons, Inc., Seattle Fur Exchange, Inc., and Harry Erickson, Defendants.

Supreme Court

*No. 88–1128. Argued September 6, 1989.—Decided December 13, 1989.*

(Also reported in 448 N.W.2d 659.)

For the defendant-appellant there was a brief (in court of appeals) by *James L. Adashek,* and *Marine Bank,* Milwaukee, and oral argument by *Mr. Adashek.*

For the plaintiff-respondent there was a brief (in court of appeals) by *Gerald H. Antoine,* and *Huiras, Farrell and Antoine,* Port Washington, and oral argument by *Gerald H. Antoine.*

WILLIAM A. BABLITCH, J. Marine Bank (Marine) appeals, arguing that optional future advances made by a first mortgagee after acquiring actual knowledge of an intervening second mortgage are not entitled to priority over the second mortgage. We conclude that

although mortgages to secure future advances are valid, optional advances made by a first mortgagee with actual knowledge of a second mortgage do not have priority over the second mortgage. Accordingly, we reverse the judgment of the circuit court.

The facts are stipulated. On September 26, 1977, Colonial Bank (Colonial) recorded a mortgage against the homestead of Tapio and Berit Tulisaari in the face amount of $75,000.00 to secure a conventional mortgage loan. The mortgage was a standard Wisconsin Banker's Association form which contained the following paragraph:

> This mortgage is given to secure prompt payment to lender of the sum stated in the first paragraph of this mortgage, plus interest, according to the terms of a promissory note made or guaranteed by mortgagor to lender dated the same date as this mortgage, and any extensions, renewals, or modifications, and any additional sums loaned by lender to mortgagor stated to be secured by this mortgage, plus interest . . ..

On September 24, 1979, Marine recorded another mortgage on the property in the face amount of $150,000.00 to secure business loans to Tapio Tulisaari. Colonial subsequently obtained actual knowledge of Marine's mortgage position when Colonial issued a new loan to the Tulisaaris in July, 1985 in the face amount of $25,000.00. Colonial requested and obtained from Marine a subordination agreement allowing Colonial to retain its senior mortgage status for Colonial's new loan which was recorded on July 16, 1985. Colonial and Marine agreed that the subordination agreement applied only to the July, 1985 mortgage loan by Colonial to the Tulisaaris.

In 1986, two additional loans were made by Colonial to the Tulisaaris: a $7,800.00 loan on April 1, 1986, and a $9,500.00 loan on November 21, 1986. These loans, which are the subject matter of the present appeal, were voluntary and discretionary loans made by Colonial and were not required by contractual commitment.

On September 1, 1987, Colonial commenced a mortgage foreclosure action. In its complaint Colonial alleged among other things that its last two advances were entitled to first priority lien protection based on the future advance clause contained in Colonial's original September, 1977 mortgage. Marine counterclaimed contending that its mortgage lien was entitled to priority over the last two advances made by Colonial. The trial court held that the last two advances were secured by Colonial's future advance clause and had priority over Marine's mortgage lien. Marine appealed from that decision.

We accepted certification to resolve the issue whether optional future advances made by a first mortgagee after acquiring actual knowledge of a second mortgage are entitled to priority over the second mortgage. This issue involves a question of law which we will decide without deference to the decision of the lower court. *See Ball v. District No. 4, Area Board,* 117 Wis. 2d 529, 537, 345 N.W.2d 389 (1984).

We conclude that although mortgages to secure future advances are valid, optional future advances made by a first mortgagee after acquiring actual knowledge of a second mortgage do not have priority over the second mortgage.

In *Capocasa v. First Nat. Bank,* 36 Wis. 2d 714, 154 N.W.2d 271 (1967), this court recognized the desirability of security instruments to secure future advances in proper circumstances. We stated at page 719:

447

There is no doubt that mortgages to secure future advances serve a socially and economically desirable purpose.

Wisconsin has long recognized that a mortgage can secure future advances and the lien of the mortgage will attach at the time of the mortgage even though the advances are made at a later date. *Carter v. Rewey* (1885), 62 Wis. 552, 22 N.W. 129; *Wisconsin Planning Mill Co. v. Schuda* (1888), 72 Wis. 277, 39 N.W. 558; *Claridge v. Evans* (1908), 137 Wis. 218, 118 N.W. 803. (Footnote omitted.)

However, the competing rights of mortgagees and intervening lienholders were not at issue in *Capocasa*. Accordingly, this court has not yet dealt squarely with the precise question whether actual knowledge of a second mortgage gives that mortgage priority over subsequent optional advances made pursuant to a mortgage for future advances.

Early English cases on the subject held that future advance clauses in mortgages gave absolute priority over intervening liens regardless of the mortgagee's knowledge of the intervening liens. 1 L. Jones, *A Treatise on the Law of Mortgages of Real Property,* sec. 452, at 583 (8th Ed. 1928). However, American courts diverged from the legal concepts which permitted that result. The courts questioned how mortgages providing for future advances could be given priority as of the recording date of the mortgage when the advances were not in fact made, and the consideration for the advance did not arise, until a subsequent date. *See* J. Moore, *Seeking Firmer Ground: Mortgages to Secure Future Advances and the Priorities Quagmire,* 12 Suffolk U.L. Rev. 445, 449 (1978).

In resolving the question of the effect of intervening liens on subsequent advances, courts began to distinguish between optional and obligatory future advances. If the mortgagee is contractually obligated at the time of recording to make the future advance, it is now generally accepted that the advance takes its priority from the date of the original mortgage, and the subsequent creditor is junior to it. *See* G. Nelson & D. Whitman, *Real Estate Finance Law,* sec. 12.7, p. 886 and n. 11 (1985).

However, if the advances made under the mortgage are purely optional, as in the present case, there is a lack of unanimity among the states as to a priority rule. The majority of jurisdictions deciding the issue hold that an intervening lien will take priority over an optional advance made by the first mortgagee if the first mortgagee has actual knowledge of the intervening claim. *Id.* at 893, and cases cited at n. 33; see also, 10 *Thompson On Real Property,* sec. 5221, at 414–16 (1957); 55 Am. Jur. 2d, *Mortgages,* sec. 355, at 413 (1971); 59 C.J.S., *Mortgages,* sec. 230(2), at 298–99 (1949).

As the court unequivocally stated in *Housing Mortgage Corp. v. Allied Const.,* 97 A.2d 802, 805–06 (Pa. 1953):

> The law is definitely established that an advance made pursuant to a mortgage to secure future advances which the mortgagee was not *obligated* to make, is subordinate in lien to an encumbrance intervening between the giving of the mortgage and the making of the advance, if the advance was made with actual notice or knowledge of the intervening encumbrance; the lien of an advance under such circumstances dates only from the time it was made and not from the time of the creation of the mortgage. In

449

other words, after notice of the existence of a junior lien, the senior mortgagee will not be protected in making further advances under his mortgage unless he is under a *binding obligation* to make such advances. (Emphasis in original.)

We conclude that the majority rule is the most appropriate.

Colonial argues that sec. 706.11(1), Stats., compels a contrary result. According to Colonial, when the mortgage priority rule contained in sec. 706.11(1) is considered in conjunction with the rule set forth in *Capocasa,* it is apparent that there is no difference between obligatory and optional future advances under current Wisconsin law. Colonial insists that both types of advances have priority over all subsequent liens even though the lender knows of the intervening interests when the advance is made. We disagree.

Section 706.11(1), Stats., provides in part as follows:

**(1)** Whenever any of the following mortgages has been duly recorded, *it shall have priority over all liens* upon the mortgaged premises and buildings and improvements thereon, except tax and special assessment liens filed after the recording of such mortgage:

. . .

(d) Any mortgage executed to a state or national bank or to a state or federally chartered credit union. (Emphasis added.)

Section 706.11(1), Stats., is silent on the subject of the competing rights of second mortgagees and first mortgagees extending subsequent future advances with notice of the intervening interest. Therefore, sec. 706.11(1) does not support the proposition that a duly recorded mortgage for future advances has priority over all subsequent liens regardless of notice. Likewise, reli-

450

ance on *Capocasa* is also misplaced. The rights of junior lienholders were not in issue in *Capocasa.*

Indeed, in discussing sec. 215.21(4)(a), Stats., an earlier statute granting priorities to savings and loan associations, the attorney general concluded:

> We have been unable to find any decision of our supreme court which determines whether the foregoing subsection applies to any other than the usual kind of mortgage as contrasted to one calling for future advances. The language used in the statute does not make it certain that the priority given a lien of a savings and loan association mortgage would extend to future advances and for that reason until there is a decision of our court on the point it would not be safe for an association to rely upon such statute as giving the lien of any advance priority over other liens filed subsequent to the recording of its mortgage. 37 Ops. Att'y Gen. 333, 343–44 (1948).

We are therefore unpersuaded by Colonial's arguments. Adopting the rule advocated by Colonial would discourage lenders from making second mortgages out of fears that the first mortgagee might make subsequent advances which would deplete the equity in the property and "cut off" the second mortgagee. Furthermore, a second mortgage lender's decision to lend is based upon the net equity in the property after deducting the first mortgage loan balance. Allowing the first mortgagee to have a permanent lien in the full face amount of its mortgage until the loan is completely paid off would therefore result in prejudice to second mortgage lenders to the extent of the difference between the original amount of the first mortgage loan and the balance remaining at the time of a second mortgage loan.

Adopting Colonial's position would also place a property owner whose first mortgage lender is unwilling

or unable to make further advances in the difficult financial position of being unable to fully utilize the equity in their home. Many first mortgages are sold by the mortgagee in the secondary mortgage market, and certain mortgage lenders do not make second mortgage loans. Under these circumstances, the property owner could be forced to refinance the entire indebtedness at increased costs in order to secure future loans.

Therefore, we hold that when optional future advances are made by the first mortgagee with actual knowledge of a second mortgage, they do not have priority over the second mortgage. The judgment of the circuit court is reversed and the case remanded to the circuit court for entry of judgment to the effect that Marine's intervening lien has priority over the subsequent advances made by Colonial on April 1, 1986, in the amount of $7,800.00 and November 21, 1986, in the amount of $9,500.00

*By the Court.*—The judgment of the circuit court is reversed and remanded with directions.

CALLOW, J., took no part.