MILBREW, INC. and AMBER LABORATORIES, A WHOLLY OWNED SUBSIDIARY, ET AL., [1] Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent Milbrew, Inc. v. Commissioner
Docket Nos. 6189-78, 6190-78, 6191-78, 6192-78, 6193-78, 6194-78, 6195-78, 6196-78, 6197-78, 6198-78, 6199-78, 6200-78, 6201-78, 6202-78, 6203-78, 6204-78.
United States Tax Court
T.C. Memo 1984-573; 1984 Tax Ct. Memo LEXIS 101; 48 T.C.M. (CCH) 1485; T.C.M. (RIA) 84573; October 29, 1984. E. Ace Bernstein,Gaar W. Steiner and John Lapinski, for the petitioners. Joseph R. Peters, for the respondent. COHEN MEMORANDUM FINDINGS OF FACT AND OPINION COHEN, Judge: Respondent determined deficiencies in Federal income tax as follows: Docket No.
Petitioner
Year
Deficiency
6189-78
Milbrew, Inc. and
1972
$1,822.13
Amber Laboratories,
1973
1,774.53
a Wholly Owned
1974
80,848.88
Subsidiary
1975
59,382.42
1976
72,558.69
6190-78
Metropolitan Sales
1974
1,673.76
Co.
1976
253.07
6191-78
Northland
1975
9,638.75
Construction Inc.
6192-78
Econo Mart Inc.
1974
2,959.00
1975
4,617.62
1976
2,524,90
6193-78
Northland Developers,
1974
55,096,69
Inc.
1975
21,360.21
1976
92,533.44
6194-78
Martin Bernstein
1974
112,143.09
and Ruth Bernstein
1975
110,123.11
1976
158,342.07
6195-78
Esau Ace Bernstein
1974
111,406.71
and Eva G. Bernstein
1975
109,038.49
1976
152,881.27
6196-78
Norman N. Bernstein
1974
38,317.82
and Freida D.
1975
41,423.84
Bernstein
1976
64,014.56
6197-78
Melvin Bernstein
1974
37,052.97
and Sharon Bernstein
1975
40,653.84
1976
63,146.04
6198-78
Sheldon Bernstein
1974
38,349.09
and Estelle
1975
42,220.69
Bernstein
1976
62,809.29
6199-78
Jodi L. Bernstein
1974
2,043.37
1975
2,144.05
1976
2,550.31
6200-78
Richard N. Bernstein
1974
2,423.15
Richard N. and
1975
2,819.34
Barbara L. Bernstein
1976
2,820.74
6201-78
Marcy B. Bernstein
1974
4,141.61
1975
4,448.28
1976
7,163.88
6202-78
Lynn C. Bernstein
1974
4,052.02
1975
4,449.78
1976
5,494.15
6203-78
Bradley A. Bernstein
1974
1,938.30
1975
2,022.56
1976
2,369.39
6204-78
David J. Cunningham
1974
3,917.75
and Mary J.
1975
6,558.08
Cunningham
David J. Cunningham
1976
7,377.99
*102 By agreement of the parties and by order of the Court, these cases were consolidated for trial, briefing, and opinion. In a proceeding for prior years, Milbrew, Inc. v. Commissioner,T.C. Memo. 1981-610, affd. 710 F.2d 1302 (7th Cir. 1983), this Court decided several of the issues initially in controversy between petitioners and respondent. After that decision and concessions by the parties, the following issues remain: 1. Whether the income and deductions associated with certain real properties located in Milwaukee and Muskego, Wisconsin, should be reported by the individual petitioners or by certain corporate petitioners (Northland Properties Issue). 2. Whether petitioners Esau Ace Bernstein and Martin Bernstein are entitled to certain deductions with respect to certain real and personal property located in Antigo, Wisconsin (Antigo Property Issue). FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference. All individual petitioners resided in Wisconsin at the time they filed their petitions herein. *103 They all filed income tax returns for the years 1974, 1975, and 1976 with the District Director of Internal Revenue in Milwaukee, Wisconsin. Co-petitioning husbands and wives filed joint returns. All corporate petitioners had their principal offices in Milwaukee, Wisconsin, at the time they filed their petitions herein. They all filed income tax returns for the years 1974, 1975, and 1976 with the District Director of Internal Revenue in Milwaukee, Wisconsin. Prior to May 1974, petitioner Northland Construction, Inc. was known as the Emporium. NVST Company is a Wisconsin limited partnership which filed information returns (Form 1065) for the years 1974, 1975, and 1976 with the District Director of Internal Revenue in Milwaukee, Wisconsin. Northland Properties Issue
Beginning in 1961 and continuing throughout the years in issue, petitioners Esau Ace Bernstein (Ace), martin Bernstein (Martin), and David J. Cunningham (Cunningham) were informal partners in Northland Development Company (Northland), an unincorporated business. Through Northland, these petitioners developed four shopping centers and seven apartment buildings. Typical development activities included *104 acquiring the land, determining the type facility to build, obtaining financing, and constructing and operating the facility. During the years in issue, Ace and Martin were the sole shareholders of corporate petitioners Metropolitan Sales Co. (Metropolitan), Northland Construction, Inc. (Construction, Inc.) and its predecessor, The Emporium, and Northland Developers, Inc. (Developers, Inc.). Ace and Martin each owned 50 percent of the stock of each corporation. Cunningham was not a shareholder in Metropolitan, Construction, Inc., or Developers, Inc., and he was not related to any member of the Bernstein family. At the suggestion of the lending institutions that advanced funds for the Northland projects, one of the above three corporations initially acquired record title to each property developed by Northland. After obtaining the necessary financing by mortgage loan, the particular corporation invariably executed a deed conveying the property either to Ace, Martin, and Cunningham or to Ace, Martin, Cunningham, and NVST Company (NVST), a partnership composed of various members of the Bernstein family. With respect to several properties, the grantees from the corporations *105 recorded the conveyances. With respect to the properties in issue (the Northland properties), however, the conveyances from the corporations were not recorded. For completeness and because respondent's argument depends in part on certain omissions and incongruities in documents reflecting title, each Northland property and the relevant conveyances are described in greater detail in the Appendix. We believe that the following summary of the common characteristics of the transactions is more helpful to an understanding of our opinion. All of the Northland properties were accounted for and operated in a virtually identical manner. Ace and Cunningham personally guaranteed repayment of each mortgage loan obtained by Metropolitan, Construction, Inc. (The Emporium), and Developers, Inc., and Martin personally guaranteed all but one of the loans. As consideration for its interests in the Northland properties, NVST assumed liability for proportionate shares of the mortgage notes. During the years in issue, all payments on the notes, and all other expenses relating to the Northland properties, were paid out of the checking account of Northland. Similarly, all income from the *106 Northland properties during the years 1974 through 1976 was deposited in Northland's checking account. Ace, Martin, Cunningham, and NVST shared the net receipts from each Northland property in proportion to their respective undivided interests in the property. It was the policy of Ace, Martin, and Cunningham to visit all residential properties weekly. The three corporations owned by Act and Martin--Metropolitan, Construction, Inc., and Developers, Inc.--also possessed many common characteristics. In its articles of incorporation, each corporation was given very broad powers that were not limited by board of directors' action or by any contract or agreement. None of the corporations, however, engaged in any day-to-day activity with respect to the Northland properties. They received no income from and bore no expenses for any of the properties. Metropolitan, Construction, Inc., and Developers, Inc. filed annual reports for the years 1974 through 1976 with the Wisconsin Secretary of State indicating that the three corporations conducted no business activity during those years. Federal income tax returns filed by Metropolitan, Construction, Inc., and Developers, Inc. *107 for the years in issue contained no income or expense items. On their Federal income tax returns for the years in issue, Ace, Martin, and Cunningham each reported a share, based upon their proportionate interests in the Northland properties, of the income and expenses attributable to the properties. NVST similarly reported a share of such income and expenses on its information returns for the years in issue. Respondent determined that the income and expense items from the Northland properties were taxable to or deductible by Metropolitan, Construction, Inc., and Developers, Inc., not Ace, Martin, Cunningham, and the partners of NVST. He also determined that Ace's and Martin's shares of the net cash received by Northland each year with respect to the Northland properties constituted distributions with respect to their stock in Metropolitan, Construction, Inc., and Developers, Inc., taxable under sections 301 and 316. [2]
Antigo Property Issue
By contract dated March 1, 1974, Developers, Inc. agreed to purchase *108 the Antigo property from Associated Milk Producers, Inc. (AMPI) for $399,706.04, $20,000 payable in cash and the balance (plus interest) payable over a 10-year period. Title to the Antigo property was held and maintained in an identical manner to title to a property located in Juneau, Wisconsin, which Developers, Inc. acquired through a recorded warranty deed dated May 12, 1967. The Antigo property was purchased to provide additional capacity for petitioner Milbrew, Inc. (Milbrew), a corporation engaged in making alcohol from milk at the Juneau property. [3] Milbrew agreed to pay rent for the Antigo property to NVST and to pay all repairs, maintenance, upgrading, and utilities expenses. No written lease was executed with respect to Milbrew's use of the Antigo property.
Developers, Inc. entered into two written lease agreements for portions of the Antigo property not used by Milbrew. Immediately after acquiring the property on March 1, 1974, Developers, *109 Inc. agreed to lease certain milk receiving and storage equipment to the seller, AMPI, in exchange for a fee based upon usage. By agreement dated December 17, 1976, Developers, Inc. agreed to lease, for a monthly fee, an office building and a parking area to the Unified School District of Antigo. During the years in issue, Ace and Martin made all payments on the purchase price of the Antigo property. Ace and Martin also paid all taxes, assessments, and other charges levied on the property by governmental entities. On their Federal income tax returns for the years 1974, 1975, and 1976, Ace and Martin reported various deductions, including depreciation, with respect to the Antigo property. The only income from the Antigo property reported by Ace and Martin during this period was a small gain on the sale of machinery reported in 1975. [4] Respondent determined that the various deductions associated with the Antigo property were not allowable to Ace and Martin. OPINION Northland Properties Issue
The first issue for decision is whether *110 the taxable income or loss from the Northland properties should be reported by Ace, Martin, Cunningham, and the partners of NVST or by Metropolitan, Construction, Inc., and Developers, Inc. The owner of property must report the income and deductions associated with that property. Helvering v. Horst,311 U.S. 112 (1940); Helvering v. Lazarus & Co.,308 U.S. 252 (1939). Because Ace, Martin, Cunningham, and NVST were both legal and beneficial owners of the Northland properties during the years in issue, we hold that these parties should bear the tax incidences of the properties. Under Wisconsin law, the unrecorded quitclaim deeds naming Ace, Martin, Cunningham, and NVST as grantees transferred full legal title to the individuals and the partnership. Section 706.02 of the Wisconsin Statutes, effective during the years in issue, which prescribes the requirements for a valid transfer of an interest in real estate, contains no recording requirement. Wisc. Stat. Ann. *111 sec. 706.02 (West 1981). The Wisconsin courts have therefore consistently held that an unrecorded conveyance is effective between the grantor and grantee and that the grantee under an unrecorded deed possesses title superior to all parties except a subsequent good faith purchaser for value who records his interest. State v. Barkdoll,99 Wis. 2d 163, 298 N.W.2d 539 (1980); Claridge v. Evans,137 Wis. 218, 118 N.W. 198 (1908). The purpose of the recording statute, Wisc. Stat. Ann. sec. 706.08 (West 1981), is merely to protect good faith purchasers who rely on the land records over prior purchasers who do not record their interests. Kordecki v. Rizzo,106 Wis. 2d 713, 317 N.W.2d 479 (1982). Thus Ace, Martin, Cunnigham, and NVST, not Metropolitan, Construction, Inc., and Developers, Inc., were the legal owners of the Northland properties during the years in issue. Although respondent concedes that a valid unrecorded deed is effective to transfer title to the grantee under Wisconsin law, he asserts that the unrecorded deeds in *112 the present case should be ignored because "petitioners have not met their burden of proof that execution and delivery of the deeds took place." His claim with respect to the deed for the Oakland Avenue property is typical: Exhibit 46-AT(E) is a copy of a purported quit-claim deed from the Emporium to David J. Cunningham and Mary J. Cunningham, his wife, Martin Bernstein and Ruth Bernstein, his wife, Ace Bernstein and Eva Bernstein, his wife. This deed only bears the year 1968. No date of transfer appears any place on the deed. There is no evidence in the record concerning how this deed was prepared or where it was kept. This is a self-serving document which was seen only by the petitioners and should be disregarded by the court. We find respondent's argument unpersuasive. Each deed in issue was notarized and all but the deed for the Janesville Road properties bore the signatures of two additional witnesses. Moreover, the only evidence introduced by respondent on this issue--the cross examination of Cunningham concerning the deed for the North Avenue property--supports the validity of the deeds: Q. Mr. Cunningham, who are the witnesses in the bottom left hand *113 corner, Oscar Binn and Carl Ganiere? A. Oscar Binn is the attorney in our office and Carl Ganiere is the accountant in our office. Q. Do you recall the circumstances of how you signed this deed? A. Well, I recall that the deeds were prepared and -- let's see, this deed, Cunningham and Bernsteins to Cunningham, Bernstein and NVST.You say, do I recall the circumstances how this deed was issued? Q. Yes. Do you recall on what day it was, was it a sunny day, what was the conversation that occurred before your signing? A. Well, I mean -- whether it was sunny or not, I couldn't possibly tell you. I don't remember the weather on any of these deeds. But, as far as the -- as far as the develop, the acquisition of the land, issuance of the recorded deed and the issuance of the non-recorded deed, I certainly can recall those details. Q. Do you recall where this deed was kept after it was signed by you? A. Yes, I do. Q. Where was it kept? A.In the safe at 6101 North Teutonia. Nothing on the face of the unrecorded deeds or elsewhere in the record indicates that the deeds were not genuine. Although petitioners introduced no evidence establishing the *114 physical delivery of the unrecorded deeds to the grantees, under Wisconsin law "there * * * [is] a sufficient delivery if an intention appears that * * * [the deed] shall be legally operative, however this intention may be indicated." Erbach v. Brauer,188 Wis. 312, 315, 206 N.W. 62, 63 (1925). Petitioners' entire course of conduct, described above in connection with the accounting for and operation of the Northland properties, indicates such an intention to pass title. Given the validity of the unrecorded deeds and their transferring title to the grantees under Wisconsin law, the present case is analogous to Bolger v. Commissioner,59 T.C. 760 (1973). The taxpayer in Bolger was an active real estate investor who operated almost identically to Northland. The taxpayer would typically form a financing corporation to purchase real property that an unrelated party desired to lease. After financing the purchase with the sale of its own notes secured by a mortgage on the property and executing a lease with the user of the property, the corporation would *115 convey the property, subject to the mortgage and lease, to its shareholders. On these facts we held that the individuals, not the corporations, were entitled to the deductions for depreciation of the properties. [5]Bolger v. Commissioner,supra at 765-768. Respondent argues that our opinion in Strong v. Commissioner,66 T.C. 12 (1976), affd. without published opinion 553 F.2d 94 (2d Cir. 1977), is dispositive of the present case. In Strong we stated that "income from property must be taxed to the corporate owner, and will not be attributed to the shareholders, unless the corporation is a purely passive dummy or is used for a tax-avoidance purpose." Strong v. Commissioner,supra at 22. As the quoted language illustrates, *116 we rejected the taxpayer's argument that the corporation there involved should be ignored for tax purposes. Strong v. Commissioner,supra at 21, 24-26. The validity of the corporation as separate taxable entities, however, is not in issue in the present case. The issue is instead whether the corporations or Ace, Martin, Cunningham, and NVST were the owners of the Northland properties for tax purposes. The corporation in Strong retained ownership of the properties throughout the years there in issue. As we noted in Davis v. Commissioner,66 T.C. 260, 270 n.2 (1976), affd. 585 F.2d 807 (6th Cir. 1978): "[In Strong] the property in question was not formally transferred to the individuals by quitclaim deed." In the case now before us and in Bolger, by contrast, the corporations actually transferred the properties in issue to the individuals. [6]
Davis v. Commissioner,supra, also illustrates *117 that we look not merely to legal title but also to beneficial ownership in determining that Ace, Martin, Cunningham, and NVST were the owners of the Northland properties. In Davis, the corporations conveyed the properties there in issue to their individual shareholders by quitclaim deeds. Additional agreements between the corporations and the individual grantees, however, insulated the grantees from liability on the mortgages to which the properties were subject; required that the corporate grantors manage the properties, obtain tenants, collect rents, make all mortgage, tax, and insurance payments, and be responsible for maintenance and repairs; and provided that the corporate grantors were entitled to the gross rents from the properties. Because of the substantial restrictions contained in the agreements, we distinguished Bolger and held that the corporations, not the individuals, must report the income and expenses associated with the properties. Davis v. Commissioner,supra at 271-272. In the present case there were no restrictions on the transfers by quitclaim deed. Ace, Martin, Cunningham, and NVST both enjoyed the benefits and bore *118 the burdens of owning the Northland properties. Each party was liable on the mortgage notes secured by the properties. All income from the properties was deposited in the checking account of Northland and all expenses relating to the properties, including mortgage payments, were paid therefrom. Each party was credited with his share of the net receipts from each property according to his ownership interest in the property. [7] The corporations performed no managerial or other routine activities with respect to the properties, whereas Ace, Martin, and Cunningham visited the residential properties weekly. Moreover, unlike the taxpayers in Davis, the individual petitioners herein reported on their tax returns all income and expense items related to the Northland properties and did not devise a scheme to attribute the income from the properties to the corporations while reporting only depreciation deductions on their *119 individual returns. Cf. Davis v. Commissioner,585 F.2d 807, 810, 816 (6th Cir. 1978), affg. 66 T.C. 260 (1976). Finally, although Cunningham was unquestionably the largest single owner, both in law and in fact, of the Northland properties, respondent's position would ignore his ownership for tax purposes. Because Cunningham had no interest in Metropolitan, Construction, Inc., or Developers, Inc., respondent could not, and did not, impute to him taxable distributions comparable to those determined with respect to Ace and Martin. We thus conclude that Ace, Martin, Cunningham, and NVST were the owners of the Northland properties for tax purposes during the years in issue. [8]
*120 Antigo Property Issue
Petitioners' argument that Ace and Martin are entitled to the deductions associated with the Antigo property rests upon collateral estoppel. According to petitioners, this Court found in the prior proceeding, Milbrew, Inc. v. Commissioner,supra, that Developers, Inc. was acting as Ace and Martin's agent in purchasing the Juneau property and that Ace and Martin were thus the true owners of the property. In the present case the parties stipulated that "[t]itle to the Antigo property was held and maintained in an identical manner to title with respect to the Juneau property." Petitioners therefore conclude that Ace and Martin were also the owners of the Antigo property. Petitioners' syllogistic argument suffers from a faulty premise. Whether Ace and Martin or Developers, Inc. was the owner of the Juneau property was not in issue in the prior proceeding. The sole issue concerning ownership of the Juneau property was whether NVST had purchased the property pursuant to a bona fide sale. Thus, in stating that "Ace and Martin, through their agent * * * [Developers, Inc.], rather than NVST, was the true owner of the Juneau *121 plant," Milbrew, Inc. v. Commissioner,supra, 42 TCM 1467 at 1491, 50 P-H Memo 81,610 at 81-2388, we did not purport to hold that Ace and Martin, as opposed to Developers, Inc., were the owners of the property for tax purposes. Indeed, that issue was irrelevant to the case there before us. Collateral estoppel does not apply where the finding in the prior decision was not necessary to the determination of an issue. Coors v. Commissioner,60 T.C. 368 (1973), affd. sub nom. Adolph Coors Co. v. Commissioner,519 F.2d 1280 (10th Cir. 1975); Amos v. Commissioner,43 T.C. 50 (1964), affd. 360 F.2d 358 (4th Cir. 1965). "[T]he significance of what a court says it decides is controlled by the issues that were open for decision." Angel v. Bullington,330 U.S. 183, 187 (1947). See also Commissioner v. Sunnen,333 U.S. 591 (1948). Any finding in the prior proceeding that Ace and Martin were the owners of the Juneau property therefore is not conclusive in the case now before *122 us. [9] Even if we were bound by this recital of facts in the prior case, it would not necessarily follow that Ace and Martin were the owners of the Antigo property for tax purposes. The stipulation in the present case, relied upon by petitioners, states only that title to the Antigo property and title to the Juneau property were held and maintained in an identical manner. As discussed above with respect to the Northland properties, the mere possession of legal title is insufficient to constitute ownership for tax purposes. Moreover, the record in the case before us indicates that Developers, Inc. actually held legal title to the Juneau property. The only evidence with respect to this issue is the deed through which Developers, Inc. acquired the Juneau property. In light of the parties' stipulation, *123 we must therefore conclude that Developers, Inc. held full legal title to the Antigo property during the years in issue. Petitioners make no argument, other than that based upon collateral estoppel, that Developers, Inc. held title to the Antigo property as agent for Ace and Martin. See generally National Carbide Corp. v. Commissioner,336 U.S. 422 (1949). We have nevertheless considered such an argument and find it factually unsupported. Developers, Inc. was granted broad powers in its articles of incorporation, and no agency agreement limited such powers with respect to the Antigo property. Although Ace and Martin made all payments on the purchase price during the years in issue, nothing in the record indicates that they were bound to do so or that Developers, Inc. could, by its actions, generally bind Ace and Martin.Developers, Inc. acted in its own name in purchasing and leasing the Antigo property--the only transactions with respect to the property on record. Thus, unlike the situation in Roccaforte v. Commissioner,77 T.C. 263 (1981), revd. 708 F.2d 986 (5th Cir. 1983), and Ourisman v. Commissioner,82 T.C. 171 (1984), *124 on appeal (4th Cir., June 25, 1984), the transaction with respect to the Antigo property was not "structured in a sufficiently narrow manner to satisfy the National Carbide prescription for a valid corporate agency." Roccaforte v. Commissioner,supra at 281. See also Vaughn v. United States,740 F.2d 941 (Fed. Cir. 1984). Ace and Martin have not satisfied their burden of proving that they were the true owners of the Antigo property during the years in issue and therefore are not entitled to the deductions associated with the property. We have considered and rejected all other arguments raised by the parties. Decisions will be entered under Rule 155.
Appendix: The Northland Properties
Metropolitan acquired title to the property located at 2213 West North Avenue in 1966 through a series of recorded warranty deeds from unrelated parties. On October 27, 1966, Metropolitan executed a mortgage on the North Avenue property for $385,000 in favor of American City Bank and Trust Company.Metropolitan then conveyed the North Avenue property to Ace, Martin, and Cunningham by an unrecorded quitclaim deed dated August 15, 1967. *125 Under this deed, Ace and Martin each received an undivided one-fourth interest in the property, and Cunningham received an undivided one-half interest. By an unrecorded quitclaim dated June 1, 1970, Cunningham, Ace, and Martin, as grantors, conveyed the North Avenue property to Cunningham, Ace, Martin, and NVST. Under the 1970 deed, the undivided interests of the grantees were 44 percent, 22 percent, 22 percent, and 12 percent, respectively. Both unrecorded deeds were signed by two witnesses and notarized. A store to be leased to National Food Stores, Inc. was built on the North Avenue property in 1968. The lease agreement, executed on January 17, 1966, and providing for a 15-year lease term beginning on May 1, 1967, named Metropolitan as lessor. The Emporium (the predecessor to Construction, Inc.) acquired title to the property located at 2616 North Frederick Avenue from unrelated parties through a recorded warranty deed dated May 25, 1967. That same day, The Emporium executed a $35,000 mortgage on the property in favor of the sellers and an $875,000 mortgage in favor of American City Bank and Trust Company. By an unrecorded quitclaim deed dated 1968 (with the *126 specific day left blank), The Emporium conveyed the Frederick Avenue property to Cunningham, Ace, and Martin, with the grantees receiving undivided interests of one-half, one-fourth, and one-fourth, respectively. [10] The grantees under the 1968 deed executed an unrecorded quitclaim deed dated June 1, 1970, which conveyed the property to Cunningham, Ace, Martin, and NVST. The undivided interests of the grantees under the 1970 deed were 44 percent, 22 percent, 22 percent, and 12 percent, respectively. Both unrecorded deeds were signed by two witnesses and notarized. A residential apartment complex was constructed on the Frederick Avenue property in 1968. During the years in issue, all leases on the facility named Lake Terrace Apartments as landlord. Lake Terrace Apartments was not a separate entity but the name of the apartment building. The Emporium acquired title to the property located *127 at 2333 North Oakland Avenue in October 1967, through a series of recorded warranty deeds from unrelated parties. On November 13, 1967, The Emporium executed a $255,000 mortgage on the Oakland Avenue property in favor of Saint Francis Building and Loan Association. By an unrecorded quitclaim deed dated 1968 (day blank), The Emporium conveyed the Oakland Avenue property to Cunningham, Ace, and Martin, with the grantees receiving undivided interests of one-half, one-fourth, and one-fourth, respectively. As was the case with the North Avenue and Frederick Avenue properties, Cunningham, Ace, and Martin conveyed the Oakland Avenue property to Cunningham (44 percent), Ace (22 percent), Martin (22 percent), and NVST (12 percent) by an unrecorded quitclaim dated June 1, 1970. Again, both unrecorded deeds were signed by two witnesses and notarized. A residential apartment complex was constructed on the Oakland Avenue property. During the years in issue, all leases on the facility named River Terrace as landlord. River Terrace was not a separate entity but the name of the apartment building. The Emporium acquired title to the property located at 2727 North Maryland Avenue from unrelated *128 parties through a recorded warranty deed dated February 2, 1971. By an unrecorded quitclaim deed bearing the same date, The Emporium conveyed the Maryland Avenue property to Ace, Martin, Cunningham, and NVST, with each grantee receiving an undivided one-fourth interest. The unrecorded deed was signed by two witnesses and notarized. On June 6, 1972, The Emporium executed a mortgage on the Maryland Avenue property for $1,800,000 in favor of Badger Federal Savings and Loan Association. In a separate agreement entitled "Consent to Transfer," also dated June 6, 1972, the savings and loan agreed that "upon receipt by it of a written notice of a sale, transfer or exchange [of the Maryland Avenue property] to * * * E. Ace Bernstein and David J. Cunningham and Martin Bernstein and NVST Co., a partnership, it will consent to such transfer." A residential apartment complex was constructed on the Maryland Avenue property. During the years in issue, all leases on the facility named Maryland Park Apartments as landlord. Maryland Park Apartments was not a separate entity but the name of the apartment building. Ace and Cunningham each acquired an undivided one-half interest *129 in the property located at 17301 West Janesville Road through a quitclaim deed from The Emporium dated September 1, 1965. [11] By a quitclaim deed dated February 14, 1974, Ace and Cunningham conveyed the 17301 West Janesville Road property to Developers, Inc. Developers, Inc. also acquired title to the property located at 17273 West Janesville Road on February 14, 1974, through a warranty deed from Econo Mart, Inc. [12] By an unrecorded quitclaim deed bearing that same date, Developers, Inc., conveyed both Janesville Road properties to Cunningham, Ace, Martin, and NVST. The grantees' undivided interests under this last deed were one-fourth each in the 17273 property and 44 percent to Cunningham, 22 percent to Ace, 22 percent to Martin, and 12 percent to NVST in the 17301 property. [13] The last deed was notarized but not witnessed. On March 25, 1974, Developers, Inc. executed a mortgage on the Janesville Road properties for $475,000 in favor of Northland Mortgage Company. *130 A store to be leased to the Great Atlantic and Pacific Tea Company was constructed on the Janesville Road properties. The lease agreement, executed on November 24, 1972, and providing for a 20-year lease period beginning on July 1, 1973, named Cunningham and Ace as lessors. Footnotes
1. Cases of the following petitioners are consolidated herewith: Metropolitan Sales Co., docket No. 6190-78; Northland Construction Inc., docket No. 6191-78; Econo Mart Inc., docket No. 6192-78; Northland Developers, Inc., docket No. 6193-78; Martin Bernstein and Ruth Bernstein, docket No. 6194-78; Esau Ace Bernstein and Eva G. Bernstein, docket No. 6195-78; Norman N. Bernstein and Freida D. Bernstein, docket No. 6196-78; Melvin Bernstein and Sharon Bernstein, docket No. 6197-78; Sheldon Bernstein and Estelle Bernstein, docket No. 6198-78; Jodi L. Bernstein, docket No. 6199-78; Richard N. Bernstein and Barbara L. Bernstein, docket No. 6200-78; Marcy B. Bernstein, docket No. 6201-78; Lynn C. Bernstein, docket No. 6202-78; Bradley A. Bernstein, docket No. 6203-78; David J. Cunningham and Mary J. Cunningham, docket No. 6204-78.↩
2. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue.↩
3. As we found in the proceeding for prior years, Milbrew was owned by various members of the Bernstein family. Milbrew, Inc. v. Commissioner,T.C. Memo. 1981-610, affd. 710 F.2d 1302↩ (7th Cir. 1983).
4. The record does not indicate whether any of the various petitioners reported additional income from the Antigo property.↩
5. Because the transferees in Bolger did not assume the mortgages on the property, but only took the property subject to the mortgages, in large portion of the Bolger opinion concerns the transferees' basis in the property. Bolger v. Commissioner,59 T.C. 760, 769-771↩ (1973). Basis to the transferees is not in issue in the present case.
6. Ogiony v. Commissioner,T.C. Memo. 1979-32, affd. 617 F.2d 14 (2d Cir. 1980), cited by respondent, is similarly distinguishable from Bolger↩ and the present case.
7. NVST did not actually withdraw cash from Northland's checking account. According to the testimony of Norman Bernstein, a general partner in NVST, the partnership's share of the residual cash was used to reduce its liability on the mortgage notes.↩
8. Eagle v. Commissioner,T.C. Memo. 1982-332, affd. without published opinion 716 F.2d 908 (8th Cir. 1983), Cited by respondent, merely reaffirms out holding in Davis v. Commissioner,66 T.C. 260 (1976), affd. 585 F.2d 807 (6th Cir. 1978), that legal title alone is insufficient to vest ownership for tax purposes in the legal titleholder. In Eagle we held that, even if the corporation had transferred legal title to the individual taxpayers by unrecorded deed, the corporation, not the individuals, must nevertheless report the income and expenses associated with the property. Unlike the corporations in the present case, the corporation in Eagle↩ was actively engaged in the operation of the property and maintained its own bank account into which it deposited all income from the property and from which it paid all related expenses.
9. Petitioners similarly cite a stipulation for trial in the prior case that Developers, Inc. was acting as agent for Ace and Martin in purchasing the Juneau property. The stipulation has no effect in the present case. Rule 91(e), Tax Court Rules of Practice and Procedure.↩
10. The precise conveyance in this deed included the wives of Cunningham, Ace, and Martin as grantees. Other deeds described herein also contained similar language. Because this fact is irrelevant to the issues presented, we shall omit all further references to the wives.↩
11. The record indicates that The Emporium acquired the property sometime in 1964, but does not indicate either the identity of the original owner or the means of acquisition. ↩
12. Although Econo Mart, Inc., is named as a petitioner herein, its tax liability is no longer in issue. The record does not disclose Econo Mart's relationship to the other petitioners; however, Ace signed the deed for the corporation as president. ↩
13. In making our findings with respect to the conveyancing of the property located at 17301 West Janesville Road, we ignore several superfluous deeds.↩